## EX PARTE MARY K. FRAILEY.

No. 22782. Delivered January 19, 1944.

The opinion states the case.

*Maury Hughes,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

The relator herein was charged by indictment with the unlawful killing of two of her children. These two cases were set for trial in the district court of Dallas County, Texas, on the 14th day of July, 1943. To these charges relator entered a plea of not guilty by reason of her insanity. Upon motion, a jury was finally impaneled to try the question of relator's sanity as provided by Art. 932-a (C.C.P.) Vernon's Ann. Crim. Statute, and upon such date a jury verdict was rendered finding relator insane at the time of the alleged offenses, as well as insane on the date of the trial. In conformity with such verdict, and as provided by statute, this proceeding was certified to the county judge of Dallas County, who proceeded to commit relator to the State Hospital for the Insane at Terrell, in Kaufman County, Texas, where she arrived July 30, 1943, and where she remained until the 11th day of December, 1943, at which time an affidavit was filed by an employee connected with such hospital, certifying that relator had been restored to sanity, and that she was now of sound mind. Operating under the provisions of Art. 5561-a of Vernon's Civil Statutes of this State, the county judge of Kaufman County heard the testimony relative to such affidavit, filed in the court over which he presided, and entered up his findings that there were no criminal charges pending against relator, and that she had been restored to sanity, and ordered her discharge from further detention by such hospital authorities, and relator was immediately released from such custody, and returned to the city of Dallas, Texas, her home. Thereupon the district attorney of Dallas County, on December 15, 1943, filed an application for a warrant of arrest in Criminal District Court No. 2 of said county, in causes Nos. 8941-B and 8942-B, each being the State of Texas v. Mary Kavanaugh Frailey, and the same cases in which she had been theretofore declared to have been an insane person. This application was by the court granted, and relator was placed in jail thereunder. She thereafter filed her appilcation for a writ of habeas corpus in which, after granting the same and hearing the facts, the district judge remanded her to the custody of the sheriff. From this judgment relator prosecutes this appeal.

The matters at difference between the State's attorneys and relator's attorneys are these: It is contended by relator's attorneys that relative to her restoration to sanity the court should

have been governed by Art. 5561-a, as the same appears in our Civil Statutes, as shown by the 1939 Cumulative Supplement of Vernon's Texas Statutes, which reads in part, as far as pertinent hereto, as follows:

"Section 1. If information in writing under oath be given to any county judge that any person in his county, not charged with a criminal offense, is a person of unsound mind, and that the welfare of either such person or any other person or persons requires that he be placed under restraint, and such county judge shall believe such information to be true, he shall forthwith issue a warrant for the apprehension of such person, or, if such like information be given to any justice of the peace in such county, said justice may issue a warrant for the apprehension of said person, making said complaint and warrant returnable to the county court of said county, and said county judge in either event shall fix a time and place for the hearing and determination of the matter, either in term time or in vacation, which place shall be either at the court house of the county, or at the residence of the person named, or at any other place in the county, as the county judge may deem best for such hearing. * * *"

Again, Section 4 of said article reads in part as follows:

"Sec. 4. Upon the filing in the county court in which a person was convicted or in the county court of the county in which a person is located at the time he is alleged to have had his right mind restored, information in writing and under oath made by a physician legally licensed to practice medicine in Texas, that a person not charged with a criminal offense, who has been adjudged to be of unsound mind, has been restored to his right mind, the judge of said court shall forthwith, either in term time or vacation, order said person brought before him by the sheriff of the county and if said issue be in doubt said judge shall cause a jury to be summoned and impaneled in the same manner as is provided for in Section 3 hereof and shall proceed to the trial of said issue, * * *."

It will be noted from the above excerpts from Article 5561-a that same relates to ordinary trials for lunacy where persons are alleged to have become insane and such fact as well as the necessity for their restraint becomes a matter of inquiry before a jury, such being a civil matter and governed entirely by the civil procedure. It is worthy of note that in each of the above quotations we find the recurring phrase "a person not charged with a criminal offense," and from its iteration we conclude that

such provisions of the statute refer to an ordinary trial of insanity, and do not apply to trials of insanity when offered as a defense for a criminal act. We further think that the phrase "not charged with a criminal offense," as used in this article refers to the status of the person at the time of the insanity trial, and such status would not be affected by dismissal of pending indictments after such lunacy trial.

The State offers as a proper statute, under which such trials should be had where insanity is offered as a defense for crime, Art. 932-a C. C. P. This statute was passed by the 45th Legislature at its Regular Session, and is found on page 1172 of such acts, a portion of the caption reading as follows: "An Act providing for the trial and commitment to State hospitals for the insane of persons found upon trial to have been insane at the time of the commission of the act, as well as at the time of the trial of such persons, * * *." Section 1 thereof reads as follows:

"In any case where insanity is interposed as a defense and the defendant is tried on that issue alone, before the main charge, and the jury shall find the defendant insane, or to have been insane at the time the act is alleged to have been committed, and shall so state in their verdict, and further find the defendant:***

"b. To have been insane at the time the act is alleged to have been committed and insane at the time of trial, or sane at the time the act is alleged to have been committed and insane at the time of trial, the Court shall thereupon make and have entered on the minutes of the Court an order committing the defendant to the custody of the sheriff, to be kept subject to the further order of the County Judge of the county, and the proceedings shall forthwith be certified to the County Judge who shall at once take the necessary steps to have the defendant committed to and confined in a State hospital for the insane until he becomes sane."

Section 3 reads as follows:

"When the defendant so committed to a hospital for the insane becomes sane, the superintendent of the hospital shall give written notice of that fact to the Judge of the Court from which the order of commitment issued. Upon receipt of such notice the Judge shall require the sheriff to bring the defendant from the hospital and place him in the proper custody until the hearing may be had before a jury in such Court to determine defendant's sanity, and if he be found sane, he shall be discharged, unless he had been previously found to be sane at the time which he is alleged to have committed the offense charged, in which

event, unless previously acquitted, he shall be tried for the offense charged."

It is evident from the just above quoted provisions of the Act of the 45th Legislature, that where insanity is offered as a defense in a criminal proceeding, such enactment governs wherein in Section 3 thereof it lays down the procedure relative to trials in order to establish the fact that such person has been restored to sanity, and that such trials, initiated as provided in Section 3, must be had in the county where the criminal prosecution was pending at the time of the presentation of such insanity plea and the trial thereunder.

A statute similar to the present 932-a, C. C. P. was found in the Revised Statutes of 1895, Art. 120, which reads as follows:

"Any patient, except such as are charged with or convicted of some offense, and have been adjudged insane in accordance with the provisions of the Code of Criminal Procedure, may be discharged from the asylum at any time upon the recommendation of the superintendent, approved by the board of managers. *Any patient coming within the above exception can only be discharged by order of the court by which he was committed.*" (Italics ours.)

This statute was passed February 5, 1858. Again, in the 1911 revision of the laws we find this above quoted article appearing as Art. 142 of the Revised Statutes 1911. However, the same seems to have been omitted in the latest revision of such statutes in 1925. Evidently the Legislature, finding the need for a statute of like import, in 1937 passed what we now find to be Art. 932-a, C. C. P., Vernon's Criminal Statutes, and thus restored the law as it had existed since 1858, with the exception of the interim between 1925 to 1937, and again leaving the trial of a restoration to sanity of a person "charged with criminal offense" to the court which had declared such person to be of unsound mind.

It therefore follows that the county court of Kaufman County was without jurisdiction to try the question of relator's sanity, and its judgment relative thereto is void and of no effect, and relator therefore should be confined in the State hospital, still possessed, however, of her right to have the question of her sanity determined by the Dallas Court.

As long as a judgment of insanity remains against a person, and has not been superseded by a judgment finding such per-

son sane, bail will not be granted pending a trial to set the insanity judgment aside. See Wilson v. State, 149 S. W. 117.

The judgment of the trial court remanding relator to the custody of the sheriff, and refusing bail pending this appeal was correct, and said judgment is hereby affirmed.